UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JAN 20 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-508-GWU

GEORGE D. SMITH, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Smith

    4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Smith

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Smith

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Smith

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Smith

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, George D. Smith, was found by an Administrative Law Judge (the ALJ) to have "severe" impairments consisting of degenerative disc disease, a dysthymic disorder, and borderline intellectual functioning. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Smith retained the residual functional capacity to perform a significant number of sedentary level jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs assuming that he were limited to sedentary exertion, and had non-exertional impairments including the following. (Tr. 352-4). He: (1) would require a brief change of position from sitting every 60 minutes; (2) could never climb ladders, ropes, or scaffolds; (3) could occasionally climb ramps and stairs, bend, and stoop; (4) was limited to operating foot controls only occasionally; (5) needed to avoid vibration, including whole body vibration, and the use of vibratory hand tools; and (6) was able to understand, remember, and carry out simple to moderately complex instructions and tasks in an object-focused environment in which there was no more than occasional

7

Smith

superficial contact with the public. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 354).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence. Because the physical factors are supported by a treating source, and ALJ gave good reasons for discounting another treating source, the Court finds that the opinion is supported by substantial evidence.

Mr. Smith alleged disability due to a back injury which had occurred in September, 2000. (Tr. 70, 322). He described low back pain radiating down his left leg, which was also numb and tingly. (Tr. 329, 337). He also had painful and swollen knees and ankles. (Tr. 338-9). He walked with a cane, used pain medication and a TENS unit, but still had to spend most of his day lying down. (Tr. 336, 341-2). Mr. Smith was also taking Paxil, which had been prescribed by his family physician, Dr. Sharon Colton, apparently after some suicidal thoughts. (Tr. 337, 346). These had only occurred "once or twice," and he had declined Dr. Colton's offer of counseling although he still became "aggravated." (Tr. 346, 350-1).

After his initial injury on September 26, 2000, Mr. Smith had been seen at an emergency room where x-rays were normal and no neurological deficits were found. (Tr. 156-7). Due to continuing problems, he was referred to a neurosurgeon, Dr. James Bean, who reviewed an MRI showing an "annular injury" at the L5-S1 level

8

but no herniation. (Tr. 153, 187). Dr. Bean found no motor, sensory, or reflex deficits, and advised Mr. Smith to continue his physical therapy with no lifting over 15 pounds, twisting or bending . (Tr. 153). In March, 2001, after Mr. Smith had returned to work, which required him to be in a bent position, he complained of increased back pain, with intermittent radiculopathy and, once again, Dr. Bean found positive straight leg raising, but no motor, sensory, or reflex deficits. (Tr. 152). He recommended a return to work "in an erect position," with lifting limited to 25 to 30 pounds and no "continuous" bending. (Id.). He felt that Mr. Smith was at maximum medical improvement, and had a five percent impairment. (Id.). On August 20, 2001, Mr. Smith made his last visit to Dr. Bean, complaining of increased leg pain. (Tr. 151). Dr. Bean's examination was essentially the same, and he stated that in view of the plaintiff's continued "subjective complaints," he would be limited to 25 to 30 pounds lifting and no "repetitive" bending or twisting until March, 2002. (Id.).

There were a variety of other opinions by one-time examiners, including Neurosurgeon Dr. Christa Muckenhausen, who opined in April, 2001, that Mr. Smith could do less than full-time sitting and standing (Tr. 134-7), Neurosurgeon Dr. Daniel Primm, who opined in June, 2001 that the plaintiff needed to undergo work hardening and should be restricted to only medium level exertion for "a few weeks" after he returned to work (Tr. 148-9), Orthopedist Dr. David Muffly, who opined in May, 2002 that Mr. Smith could perform sedentary level exertion with no more than three hours of sitting or standing in an eight-hour day (Tr. 159) and Dr. A. Dahhan,

9

Smith

who opined on July 21, 2003 that Mr. Smith could occasionally lift up to 20 pounds and could alternate sitting, standing, and walking a total of nine hours a day, making him capable of full-time work, but with additional non-exertional restrictions (Tr. 226). The ALJ stated in her decision that she based her functional capacity findings primarily on the treating source, Dr. Bean, but also incorporated non-exertional restrictions from Dr. Dahhan and Dr. Primm. (Tr. 19).

The plaintiff argues that not all Dr. Dahhan's non-exertional restrictions were included in the hypothetical question, but since the ALJ could reasonably have relied upon Dr. Bean's restrictions alone, the inclusions of any restrictions from Dr. Dahhan was gratuitous.

The plaintiff's primary argument is that the ALJ should have accepted a functional capacity assessment form from the office of the plaintiff's treating family physician, Dr. Sharon Colton, which limits Mr. Smith to less than full-time standing and sitting, although it also indicates that he could lift up to 30 pounds occasionally and 25 pounds frequently, which is far more than the ALJ determined. (Tr. 161-2). The plaintiff maintains that this assessment, prepared in May, 2002, was dated after the plaintiff had apparently undergone a second MRI of the lumbar spine, showing a disc bulge at L5-S1 with contact of the thecal sac. The only reference to the specific results of this MRI is contained in the report of Dr. Muffly, who describes the bulge as showing "contact" of the thecal sac, but adds that there is "no apparent herniation or nerve root impingement." (Tr. 159). Thus, it is not apparent to a lay

10

Smith

reviewer that the bulge was significantly worse than at the time of the previous MRI in September, 2000. (Tr. 187). Also, although the functional capacity form from Dr. Colton mentions an unspecified "MRI report" as providing support for its restrictions, it primarily cites the results of a "functional capacity exam performed by Kentucky Physical Therapy." (Tr. 161). As the ALJ pointed out, the functional capacity report is contained in the record, and does not appear to support the restrictions given by Dr. Colton. (Tr. 19). On February 9, 2001, the plaintiff reported that he felt able to go back to his job, which involved lifting up to 80 pounds, and the report notes that the "patient demonstrates achievement of functional lifting goals for return to work with minimal subjective complaints." (Tr. 113-14). Although the report is not entirely clear as to a final functional capacity (e.g., Tr. 115-16), Dr. Colton subsequently gave Mr. Smith a work release for "light duty" in an "erect" position with no continuous bending (Tr. 174). Nothing was said about sitting and standing restrictions which would preclude full-time work. Therefore, although an argument could be made the other way, the ALJ advanced good reasons for declining to accept Dr. Colton's opinion. Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Finally, the plaintiff argues that the ALJ improperly discounted statements by a consultative psychological examiner, Dr. Gary Maryman, that, based on a valid full-scale IQ score of 72, Mr. Smith was most likely precluded from "more complicated and sophisticated" work assignments, maintaining attention/concentration and

11

Smith

tolerating work pressures. (Tr. 231). However, the ALJ's indication in the hypothetical question that Mr. Smith was able to understand, remember, and carry out simple to moderately complex instructions in a job requiring no more than superficial contact with the public accounts for Dr. Maryman's specific limitations of no useful ability to deal with the public, and at least a "limited but satisfactory" ability to understand, remember, and carry out detailed but not complex job instructions, and to maintain attention and concentration. (Tr. 232-3).

The decision will be affirmed.

This the __20__ day of January, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE